1    **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                      FOR THE DISTRICT OF ARIZONA

8

9    Dyretha Hambright,                    )    No. 05-1302-PHX-FJM
                                            )
10              Plaintiff,                  )    **ORDER**
                                            )
11   vs.                                    )
                                            )
12                                          )
     John Potter et al.,                    )
13                                          )
                Defendants.                 )
14                                          )
     _____       )

15

16

17          The court has before it defendants' motion for summary judgment (doc. 19) and

18   statement of facts (doc. 20); plaintiff's response (doc. 30) and statement of facts (attached as

19   an exhibit to doc. 30); and defendants' reply (doc. 33).  For the reasons stated below, we

20   grant defendants' motion in its entirety.

21                                    **I.**

22          Plaintiff Dyretha Hambright has worked for defendant United States Postal Service

23   ("USPS") since 1966.  In February 1999, while driving to USPS's Arcadia station, plaintiff

24   was injured in a car accident, and as a result, was absent from work for several months.  On

25   April 13, 2000, she returned to work at USPS's Rio Salado station.  By 2003, she worked at

26   the Ahwatukee station as a customer services supervisor.

27          On June 22, 2004, plaintiff filed an "EEO Complaint of Discrimination in the Postal

28   Service" ("June 2004 EEO Complaint") alleging racial discrimination and disability

discrimination based upon, among other things, an interaction with USPS employee John Palmer.  In a Final Agency Decision, the Postal Service dismissed the complaint for failure to state a claim.

On August 9, 2004, Carl Grigel, USPS' Phoenix Postmaster, asked plaintiff to submit to a fitness for duty exam ("FFD"), a medical evaluation to determine if plaintiff was able to perform her workplace responsibilities.  In the narrative attached to the FFD request, Grigel described several instances in which plaintiff claimed to suffer from memory loss.

Plaintiff filed a second "EEO Complaint of Discrimination in the Postal Service" in December 2004 ("December 2004 EEO Complaint").  This complaint alleged that plaintiff was forced to submit to the FFD and a urine test as a result of her temporary memory loss disability, and in retaliation for her June 2004 EEO Complaint.  On February 2, 2005, the Postal Service's Final Agency Decision dismissed the December 2004 EEO Complaint for failure to state a claim.  Sometime between February 2, 2005, and March 4, 2005, plaintiff appealed the dismissal to the Equal Employment Opportunity Commission's Office of Federal Operations ("OFO").

Plaintiff filed this action on May 2, 2005.  On June 24, 2005, an EEO Dispute Resolution Manager wrote to the OFO, and requested dismissal of plaintiff's appeal of the February 2, 2005 agency decision because plaintiff filed this action.  On June 28, 2005, the OFO reversed the February 2, 2005 dismissal of the December 2004 EEO Complaint.

**II.**

On a motion for summary judgment under Rule 56, Fed. R. Civ. P., the moving party carries the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  When the moving party satisfies this initial burden, the burden then shifts to the nonmoving party to establish that a genuine issue of material fact exists.  Id. at 324, 106 S. Ct. at 2553-54.

**A.**

1

2          Defendants first move for summary judgment on plaintiff's claims that are premised

3    on disability discrimination, arguing that (1) plaintiff is not disabled, (2) plaintiff did not

4    suffer an adverse employment action, and (3) defendants had nondiscriminatory reasons for

5    ordering an FFD.  See Motion for Summary Judgment at 4-9.[1]  Plaintiff responds that she is

6    disabled due to both a back injury and memory loss, that the FFD was an adverse employment

7    action, and that defendants' nondiscriminatory reasons for the FFD are pretextual.  See

8    Response at 8-14.  Defendants reply that plaintiff cannot base her Rehabilitation Act claim

9    on her back injury because it was never raised in her December 2004 EEO Complaint, and

10   that plaintiff fails to rebut defendants' nondiscriminatory reasons for ordering the FFD.  See

11   Reply at 3-7.

12         The rights and remedies available under Title VII of the Civil Rights Act are also

13   available to a person complaining of discrimination in violation of the Rehabilitation Act.

14   Boyd v. USPS, 752 F.2d 410, 413 (9th Cir. 1985).  Similarly, the scope of a Rehabilitation

15   Act claimant's federal court action is limited in the same manner as a Title VII claimant's

16   action.  The scope of claims in federal court actions alleging violations of these statutes

17   depends upon the scope of both the EEOC charge and the EEOC investigation that gives rise

18   to the federal claims.  Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990).  We may not

19   consider allegations of discrimination not included in a plaintiff's administrative charge

20   "unless the new claims are 'like or reasonably related to the allegations contained in the EEOC

21   charge.' "  B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1100 (9th Cir. 2002) (citation

22   omitted).  A plaintiff's civil claims should be considered reasonably related to allegations in

23

24

25         [1]  Defendants move for summary judgment on plaintiff's disability discrimination
26   claim whether it is based on failure to accommodate, "disparate treatment/adverse
     employment action," or both.  Motion for Summary Judgment at 4 n.2.  We limit our focus
27   to defendants' disparate treatment arguments because plaintiff states that her disability
28   discrimination claims are based solely on a disparate treatment theory.  See Response at 9.

1  the charge "to the extent that those claims are consistent with the plaintiff's original theory of

2  the case." Id.

3        Plaintiff's December 2004 EEO Complaint is the charge that gives rise to this action,

4  and provides us with plaintiff's original theory of the case. See December 2004 EEO

5  Complaint, Plaintiff's Statement of Facts ("PSOF") Exhibit 14. There, plaintiff alleged that

6  she was forced to submit to an FFD and a urine test "based upon her disability (Temporary

7  Memory Loss) and in retaliation for filing a prior EEO complaint." Id. In the "Information

8  for Pre-Complaint Counseling" attached to the December 2004 EEO Complaint, plaintiff

9  states that she was discriminated against because she suffers from "a temporary memory loss,"

10 and that she was alleging "mental disability" discrimination. December 2004 EEO Complaint,

11 Defendants' Statement of Facts ("DSOF") Exhibit 9b. The Final Agency Decision dismissing

12 plaintiff's December 2004 EEO Complaint describes the basis of plaintiff's EEO Complaint

13 as "Retaliation (Prior EEO Activity), Mental Disability (Temporary Memory Loss)." Final

14 Agency Decision for December 2004 EEO Complaint, PSOF Exhibit 15. Further, it describes

15 plaintiff's claims that she suffers from the medical condition of "short term memory loss." Id.

16

17       Plaintiff's back injury and memory impairment both allegedly resulted from plaintiff's

18 1999 accident. However, that fact alone does not entitle plaintiff to assert a claim of

19 discrimination based on her back injury here. Indeed, plaintiff does not even argue that her

20 back injury allegations are reasonably related to the memory loss allegations in her December

21 2004 EEO Complaint. Disability claims premised upon a back injury contradict the letter of

22 her administrative charge, the theory of the case plaintiff articulated in that charge, and the

23 focus of the Postal Service's EEO investigation. Therefore, we limit our analysis of plaintiff's

24 Rehabilitation Act claim to discrimination based on her alleged memory impairment.

25       "To state a prima facie case under the Rehabilitation Act, a plaintiff must demonstrate

26 that (1) she is a person with a disability, (2) who is otherwise qualified for employment, and

27 (3) suffered discrimination because of her disability." Walton v. United States Marshals

28 Serv., 476 F.3d 723, 727 (9th Cir. 2007). The Rehabilitation Act incorporates the Americans

1   with Disabilities Act's ("ADA") standards of substantive liability and its definition of

2   disability. Id. Therefore, disability is defined as: "(A) a physical or mental impairment that

3   substantially limits one or more of the major life activities of such individual, (B) a record of

4   such an impairment, or (C) being regarded as having such an impairment" for purposes of

5   both the ADA and the Rehabilitation Act. Id.

6       Plaintiff has failed to demonstrate that she is disabled under any definition. First,

7   plaintiff does not argue that her memory loss is a physical or mental impairment that

8   substantially limits one or more of her major life activities. Rather, she contends that her back

9   injury substantially limited a major life activity. See Response at 10-11. We may not

10  consider plaintiff's back injury, and therefore conclude that plaintiff is not disabled for

11  purposes of the first disability definition.

12      Plaintiff's argument that she is disabled under the second definition of disability makes

13  no express mention of her memory impairment. See Response at 12. However, we construe

14  plaintiff's generalized argument that she was disabled under the second definition of disability

15  as the contention that she was disabled as a result of her memory loss. See Response at 11

16  (citing Response at 8, which mentions forgetfulness, in support of the argument that "Plaintiff

17  has a Record of Impairment to Major Life Activity").

18      "To have a record of an impairment that substantially limits a major life activity means

19  to have 'a history of, or [have] been misclassified as having, a mental or physical impairment

20  that substantially limits one or more major life activities.' " Coons v. Sec'y of the U. S.

21  Treasury Dep't, 383 F.3d 879 (9th Cir. 2004) (citation omitted). The documents plaintiff cites

22  in support of this argument make no mention of a memory impairment. See Response at 10-

23  11.[2]   However, at least one of plaintiff's exhibits that does refer to a memory impairment

24  _____

25  [2] Rather, the cited documents refer to: (1) plaintiff's approved extension of light duty, which allowed her to avoid "postal driving" through June 15, 2001, see USPS Light Duty

26  Extension, PSOF Exhibit 33; (2) deposition testimony regarding that light duty extension, see Christie C. Ryder Deposition at 19:11-20:3, PSOF Exhibit 17; (3) a letter from a physical

27  therapist describing plaintiff's therapy for "lumbar spine symptoms," see January 30, 2004 Letter from Jason Webber, PT, PSOF Exhibit 31; (4) a letter from a physician who treated

28

1  contradicts this theory of disability.  See Documentation for Claim of Mental And/Or Physical

2  Disability, PSOF Exhibit 36.  There, plaintiff alleged having a temporary memory loss

3  impairment.  Id.  However, plaintiff's response to the question of whether the impairment

4  "substantially limit[s] your ability to perform a major life activity?" was "No."  Id. (emphasis

5  in original).  Therefore, we also conclude that plaintiff is not disabled based on the "record"

6  theory of disability.

7        Under the third definition of disability, individuals are disabled if an employer (1)

8  "mistakenly believes that a person has a physical impairment that substantially limits one or

9  more major life activities," or (2) "mistakenly believes that an actual, nonlimiting impairment

10  substantially limits one or more major life activities."  Sutton v. United Air Lines, 527 U.S.

11  471, 489, 119 S. Ct. 2139, 2149-50 (1999).  We reject plaintiff's attempts to establish this kind

12  of disability for several reasons.  First, plaintiff cannot rest on an assertion that defendants

13  perceived that she was impaired.  See Response at 13.  Rather, plaintiff must also establish

14  that the perceived impairment was one defendants thought substantially limited a major life

15  activity.  Plaintiff merely asserts that the FFD "was based on [Grigel's] perception that

16  Plaintiff was impaired due to back injuries and memory loss."  Response at 13 (citing "PSOF

17  No.32," although plaintiff's statement of facts is only 30 statements long).  It says nothing of

18  defendants' perception of the limitations that impairment may have caused.

19        The FFD request further establishes that defendants did not perceive that plaintiff had

20  an impairment that substantially limited a major life activity.  Rather, the request evidences

21  a desire to determine whether plaintiff was in fact substantially limited.  See FFD Request,

22  _____

23  plaintiff for "lumbar spine condition," see January 29, 2004 Letter from Dr. Douglas
   Slaughter, PSOF Exhibit 38; (5) deposition testimony regarding plaintiff's employment
24  evaluations, her 1999 accident and resulting injuries, and plaintiff's light duty limitations, see
   Deposition of Carl Grigel at 22-29, PSOF Exhibit 18; and (6) a former supervisor's
25  deposition testimony regarding plaintiff's employment evaluations, see Deposition of Diane
   Carideo at 21-20, PSOF Exhibit 19.  Our review of these exhibits was extensive.  Further,
26  it was unnecessarily complicated because plaintiff cited to pages of certain documents that
   were missing from the actual exhibits, and misidentified several exhibits cited to in her
27  Statement of Facts.

28

1   PSOF Exhibit 5 (stating that "Postal Service needs to determine if subject has cognitive

2   decision making abilities and can has [sic] the short term memory needed for handling

3   customers, employees, accounting, and Postal Funds.").

4        Plaintiff has failed to establish that she is disabled.  Therefore, plaintiff has failed to

5   establish a prima facie case of disability discrimination under the Rehabilitation Act, and we

6   grant defendants' motion on this ground.[3]

7                                        **B.**

8        Defendants next move for summary judgment on plaintiff's retaliation claims.  First,

9   they argue that plaintiff's Title VII retaliation claim fails because plaintiff (1) cannot show that

10  she suffered an adverse employment action and (2) cannot show a causal connection between

11  the protected activity and the action she alleges was adverse.  Motion for Summary Judgment

12  at 9-12.  In their reply, defendants argue that plaintiff's Title VII retaliation claim fails because

13  no Title VII claims were presented administratively, and that the Rehabilitation Act retaliation

14  claim fails because plaintiff's pretext allegations do not rebut the nondiscriminatory reasons

15  for ordering an FFD.  Reply at 7-10.  We conclude that plaintiff has failed to rebut defendants'

16

17

18

19

20

21        [3]  Plaintiff's complaint alleges a claim of employment discrimination in violation of

22  the Rehabilitation Act and a claim of discrimination in violation of the ADA.  See Complaint
    (doc. 1) at 3.  In her response, plaintiff clarifies that both of these claims are premised upon

23  disability discrimination.  Response at 8-14.  The standards that determine whether the
    Rehabilitation Act has been violated by the kind of discrimination plaintiff alleges are

24  borrowed from the ADA.  See 29 U.S.C. § 791(g).  Therefore, in granting defendants'
    summary judgment motion to the extent that it argues that plaintiff is not disabled for

25  purposes of the ADA, we grant defendants' motion as to Count 1, Rehabilitation Act

26  discrimination, and Count 2, ADA discrimination.  Alternatively, plaintiff's Count 2 claim
    fails because 29 U.S.C. § 791 of the Rehabilitation Act is the exclusive remedy for federal

27  employees' disability discrimination claims.  Johnston v. Horne, 875 F.2d 1415, 1420 (9th

28  Cir. 1989).

                                        - 7 -

1    nondiscriminatory reasons for ordering the FFD, and do not reach the remaining arguments.[4]

2

3         Plaintiff's June 2004 EEO Complaint alleged racial discrimination and disability

4    discrimination.  See June 2004 EEO Complaint, PSOF Exhibit 13.  Her December 2004 EEO

5    Complaint alleged retaliation for filing the June 2004 Complaint.  See December 2004 EEO

6    Complaint, PSOF Exhibit 14.  Defendants concede that plaintiff's June 2004 EEO Complaint

7    was a protected activity for purposes of the Title VII retaliation claim, and assume that the

8    June 2004 EEO Complaint gives rise to the Rehabilitation Act retaliation claim.  See Motion

9    for Summary Judgment at 11; Reply at 9.  Plaintiff argues that the FFD she was required to

10   submit to was an adverse employment decision ordered in retaliation for her June 2004 EEO

11   complaint.  See Response at 2.[5]  Therefore, our discussion of plaintiff's two retaliation claims

12   ───────────────────────

13        [4] Plaintiff's complaint alleges a claim of retaliation based on conduct protected by
     both the Rehabilitation Act and Title VII.  See Complaint at 4.  However, defendants' motion
14   moves for summary judgment on plaintiff's Title VII retaliation claim, but not the
     Rehabilitation Act retaliation claim.  See Motion for Summary Judgment at 9.  Defendants
15   first raise the argument that plaintiff's Rehabilitation Act retaliation claim fails in their reply.
     See Reply at 7-10.  However, as discussed infra, both retaliation claims rely on plaintiff's
16   December 2004 EEO Complaint.  Further, the FFD is the only action we may consider in
     determining whether plaintiff was subject to an adverse employment action for purposes of
17   both retaliation claims.  See infra n.5.  Plaintiff's pretext arguments do not distinguish
18   between the Rehabilitation Act retaliation claim and the Title VII retaliation claim,
     presumably because both arise out the same EEO Complaint.  We conclude that because
19   these two claims arise out of one EEO Complaint, plaintiff was on notice that she had to
     come forward with evidence regarding both claims.  Therefore, we are authorized to enter
20   summary judgment on the Rehabilitation Act retaliation claim sua sponte.  See Celotex, 477
21   U.S. at 326, 106 S. Ct. at 2554.

22

23        [5] Plaintiff's response also alleges that she was retaliated against as a result of filing
24   her June 2004 EEO complaint by being subjected to a "hostile work environment," and that
     she was "relieved of her supervisory duties, reassigned, lost pay and disciplined."  Response
25   at 4, 6.  For the reasons stated supra, plaintiff's December 2004 EEO Complaint limits the
     scope of our review.  The only adverse actions complained of in the December 2004 EEO
26   Complaint are the FFD and urine test.  See PSOF Exhibit 14.  Additionally, although
27   plaintiff's December 2004 EEO Complaint states that plaintiff was forced to submit to a urine
28   test in addition to an FFD, plaintiff's response argues that the FFD, but not the urine test, is

1   collapses into an analysis of the order that plaintiff submit to an FFD.  We conclude that

2   defendants have articulated nondiscriminatory reasons for their actions, and that plaintiff's

3   pretext arguments do not rebut defendants' proffered reasons.

4        "To make out a prima facie case of retaliation, an employee must show that (1) he

5   engaged in a protected activity; (2) his employer subjected him to an adverse employment

6   action; and (3) a causal link exists between the protected activity and the adverse action."  Ray

7   v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000).  If plaintiff establishes a prima facie case,

8   "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its

9   decision."  Id.  "If the defendant articulates such a reason, the plaintiff bears the ultimate

10  burden of demonstrating that the reason was merely a pretext for a discriminatory motive."

11  Id.  This order and allocation of proof applies to actions for unlawful retaliation under Title

12  VII and the Rehabilitation Act.  See Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir.

13  1982) (Title VII); Coons v. Sec'y of the United States Treasury Dep't, 383 F.3d 879, 887 (9th

14  Cir. 2004) (Rehabilitation Act).

15       We need not assess plaintiff's prima facie case because defendants have articulated

16  nondiscriminatory reasons for their decision to order an FFD.  Postmaster Grigel ordered the

17  FFD because plaintiff claimed that "she cannot remember critical information needed to

18  prepare reports, finalize close-out information, and safety information."  FFD Request Form,

19  DSOF Exhibit 4b.  Further, the FFD was requested because plaintiff "was involved in a verbal

20  conflict that was so upsetting to her that she could not continue to work,"  but when asked

21  what upset her, plaintiff stated "she had no memory of it due to her short term memory loss."

22  Id.  Also, the request notes that plaintiff had issues with "reporting to work on time."  Id.

23  Plaintiff's interactions with defendants' customers caused certain customers to contact the

24  Postmaster.  Id.  When the customers' calls were raised with plaintiff, she could not recall the

25  incidents in a manner that would enable the Postmaster to respond to the complaints.  Id.

26

27  the employment decision that gives rise to her retaliation claims.  See Response at 2, 4, 5, 14.
    Therefore, we need not address whether the urine test was ordered for nondiscriminatory
28  reasons, but only discuss the proffered reasons for ordering the FFD.

1  Grigel noted that plaintiff "becomes defensive" when approached regarding the calls.  Id.
2  Plaintiff supervises certain operations and "had an issue with reporting an accident and
3  claimed [her failure to report] was due to her memory loss."  Id.  The request also notes that
4  plaintiff was involved in a car accident that resulted in a long-term absence and workplace
5  limitations on her driving responsibilities.  Id.

6      Plaintiff contends that defendants' proffered explanations are "self-serving" and
7  unconvincing, Response at 7, and argues that several facts demonstrate that defendants'
8  reasons for ordering an FFD were pretextual, id. at 8.  First, plaintiff alleges that defendants'
9  decision was pretextual because plaintiff  "served as supervisor for USPS of many years
10 [sic]," received evaluation ratings that she met or exceeded expectations from 2001 through
11 2006, and in 2004 was rated "exemplary."  Id. at 8.  She does not dispute the content of the
12 FFD request.  Therefore, this sort of evidence of a complaint-free record does not meet
13 plaintiff's pretext burden.  See Bodett v. Coxcom, Inc., 366 F.3d 736, 745 (9th Cir. 2004).

14     Second, plaintiff alleges that defendants' FFD request was pretextual because
15 Postmaster Grigel, who ordered the exam, was aware of the incidents which gave rise to
16 plaintiff's December 2004 EEO Complaint.  Response at 8 (citing Deposition of Carl Grigel
17 at 31-35, 37-39, PSOF Exhibit 18).  However, the testimony plaintiff points to only buttresses
18 defendants' nondiscriminatory explanations.  For example, when asked to explain the FFD
19 request, Grigel testified that plaintiff stated that she did not report a workplace accident
20 because she suffered from short-term memory loss.  Id. at 39.

21     Grigel acknowledges his awareness of plaintiff's altercation with John Palmer, which
22 she complained of in her June 2004 EEO Complaint.  Id. at 48.  Yet he also states that when
23 plaintiff was asked to explain her altercation with Palmer, plaintiff claimed to not be able to
24 remember the altercation because of her short-term memory loss.  Id.  Grigel's testimony does
25 not state that the EEO complaint motivated the FFD request.  Indeed, plaintiff's own statement
26 of facts asserts that "Grigel sent Plaintiff to a FFD because he was concern [sic] her memory
27 issues caused by injuries she suffered in a 1999 auto accident would affect her work."  PSOF
28 at 3.

1    Next, plaintiff alleges that ordering the FFD was pretextual because FFDs are usually

2  ordered by an employee's immediate supervisor, but plaintiff's FFD was ordered by

3  Postmaster Grigel.  Response at 8 (citing PSOF Exhibits 20, 27).  The only evidence in

4  support of this assertion states that FFD requests "originated with the employee's supervisor."

5  See Affidavit of Peter Bethge, PSOF Exhibit 27.  Exhibit 20 asserts that FFDs were not

6  ordered for certain individuals, but says nothing of which USPS employee generally orders

7  an FFD.  See Affidavit of Candace Green, PSOF Exhibit 20.  Plaintiff cites to no authority in

8  support of her proposition that the manner in which defendants ordered this FFD request is

9  evidence of pretext.

10    Even if we assume that the fact that an FFD ordered by a Postmaster instead of an

11  immediate supervisor is unusual, we would still conclude that it is not evidence of pretext.

12  The circumstances surrounding the workplace accident mentioned in the FFD request explain

13  why Grigel, but not plaintiff's supervisor, ordered plaintiff's FFD.  Plaintiff's supervisor, Mike

14  Ginerva, "was not going to sign off on any disciplinary action against" plaintiff, because

15  plaintiff "was the only supervisor in the office at the time of the accident." Id.  What followed

16  after Ginevra learned of the accident is unclear, as plaintiff has included only selective

17  portions of deposition testimony.[6]

18    However, from what we can piece together, plaintiff's failure to report a workplace

19  accident was so out of the ordinary that Grigel's involvement was warranted.  Ginevra's

20  supervisor testified that the manner in which plaintiff dealt with the accident was so unusual

21  that it would "stand out." See Christie Ryder Deposition at 33, PSOF Exhibit 17.  Further,

22  Grigel testified that he was aware of the incident, and as a result, contacted the acting manager

23  at plaintiff's station, who then spoke to plaintiff.  See Deposition of Carl Grigel at 39, PSOF

24  _____

25    [6] Indeed, the last sentence of page 39 of Grigel's deposition ends with his statement
   that after learning that plaintiff's memory impairment may affect her ability to report
26  workplace accidents, "I was aware of a condition that subjects the Postal Service to." See
   Carl Grigel Deposition at 39, PSOF Exhibit 18.  The page that follows page 39 is
27  unnumbered, and begins with a complete sentence unrelated to the sentence that closes page
   39.
28

1    Exhibit 18.  Grigel then learned that plaintiff explained that she failed to report the accident

2    because of short-term memory loss.  Id.  The unusual nature of the incident, Ginevra's

3    unwillingness to discipline plaintiff, and the fact that Ginevra was not present when the

4    accident occurred explains Grigel's involvement.  In this context, the fact that Grigel ordered

5    the FFD, but not Ginerva, does not constitute evidence of pretext.  Rather, it showcases

6    defendants' nondiscriminatory need to investigate a serious incident and evaluate plaintiff's

7    fitness for duty.[7]

8          Finally, plaintiff asserts that defendants' nondiscriminatory reasons are pretextual

9    because other employees who forgot to carry out their duties were not ordered to submit to

10   FFDs.  See Response at 8.  A showing that defendants treated similarly situated employees

11   who did not file an EEO complaint more favorably than plaintiff would be probative of

12   pretext.  Vasquez v. County of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003).  However,

13   "individuals are similarly situated when they have similar jobs and display similar conduct."

14   Id.

15   Here, plaintiff does not allege that other employees who had memory lapses also
16   asserted that their memory lapses were due to short-term memory impairments.  Occasional
17   forgetfulness is a common workplace occurrence.  Explaining workplace errors by claiming
18   to suffer from a memory impairment is not.  In fact, it is a claim that warrants investigation
19   because it distinguishes its maker from the average employee.  Therefore, any failure to order
20   FFDs for forgetfulness that was *not* attributed to the kind of memory impairment plaintiff
21   claimed is immaterial for purposes of pretext.  Also, plaintiff does not contend that the
22   employees who had memory lapses were also the subject of customer complaints, or that they

23

24         [7] The best account of the workplace accident plaintiff failed to report comes from an
25   EEO Dispute Resolution Specialist's summary of the facts at issue in plaintiff's December
     2004 EEO Complaint.  See Dispute Resolution Specialist's Inquiry, DSOF Exhibit 9b.  The
26   Specialist's report also explains that Grigel, as lead executive for USPS in Phoenix, "was
     concerned that [plaintiff's] memory loss might hinder her from performing her duties as
27   required" and that plaintiff's medical condition "could have grave consequences if she forgot
28   anything of importance."  Id.

1    were tardy, as plaintiff was.  Therefore, because the employees to whom plaintiff compares

2    herself did not display conduct similar to plaintiff's, they are not similarly situated, and their

3    treatment is not probative of pretext.[8]

4                                           **C.**

5        Finally, defendants move for summary judgment on plaintiff's Family and Medical

6    Leave Act ("FMLA") claim, arguing that they never denied plaintiff's FMLA leave requests,

7    and that any events occurring before June 2004 cannot give rise to an FMLA violation

8    because such allegations are time-barred.  See Motion for Summary Judgment at 12-13.

9

10
_____

11        [8]  Because we grant defendants' motion as to plaintiff's Title VII and Rehabilitation
     Act claims for the reasons stated supra, we do not reach defendants' failure to exhaust
12   arguments, based on plaintiff's decision to file this case before receiving a final decision
     regarding her OFO appeal.  See Motion for Summary Judgment at 2-4, Reply at 2-3.
13   However, we do note that Ninth Circuit precedent regarding the issue has evolved since
     Rivera v. USPS, which held that once a party appeals to a statutory agency, it cannot file a
14   claim in district court until that appeal is exhausted.  830 F.2d 1037, 1039 (9th Cir. 1991)
     (stating that "[i]mpatience with the agency does not justify immediate resort to the courts").
15   See, e.g., Bak v. Postal Service, 52 F.3d 241, 244 (9th Cir. 1995) ("The primary goal of the
     exhaustion requirement is to prevent simultaneous proceedings regarding the same claim");
16   Bankston v. White, 345 F.3d 768, 777 (9th Cir. 2003) (stating that "[t]he policy concern for
17   administrative efficiency expressed in earlier cases is attenuated or even eliminated" when
     the plaintiff "has no administrative remedy currently pending or available in the future").
18   Although both Bak and Bankston addressed claims of age discrimination, their holdings are
19   informative.  This area of the law is further complicated by several decisions that label the
     exhaustion requirement a jurisdictional prerequisite.  See, e.g., B.K.B. v. Maui Police Dep't,
20   276 F.3d 1091, 1099 (9th Cir. 2002) (stating that a Title VII plaintiff is required to exhaust
21   administrative remedies in order to establish subject matter jurisdiction).  The exhaustion
22   requirement is more accurately termed a statutory precondition to filing suit.  See Zipes v.
     TWA, 455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982).  In Zipes, the Supreme Court held
23   that timely filing a charge of discrimination with the EEOC "is not a jurisdictional
24   prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is
     subject to waiver, estoppel, and equitable tolling."  Id.  Here, we are faced with the effect of
25   filing an action in federal court while an administrative appeal is unresolved, and not with
26   the timeliness of an initial charge.  Nevertheless, although we do not decide this issue, we
27   suggest that the Zipes logic is still applicable.  Zipes is of special relevance to a case like this,
     where one agent involved in the administrative review suggested that plaintiff's
28   administrative case be dismissed due to plaintiff's filing of a federal court action.

1   Plaintiff alleges that her FMLA claim is based on defendants' retaliatory decision to order an

2   FFD in response to her FMLA-protected activity, which she describes as taking FMLA leave

3   for back injury treatments.  See Response at 16.  Defendants contend that plaintiff's claim

4   nevertheless fails because she cannot establish that her FMLA-protected activity resulted in

5   the FFD, and alternatively, that plaintiff cannot establish that the exam was motivated by

6   discriminatory pretext.  See Reply at 11.  We conclude that plaintiff has failed to allege any

7   connection between her FMLA leave and the FFD, and need not reach defendants' pretext

8   argument.

9        If an employee takes FMLA-protected leave, the taking of that leave may not be used

10  against the employee in an employment decision.  Bachelder v. Am. W. Airlines, Inc., 259

11  F.3d 1112, 1125 (9th Cir. 2001).  To assert an FMLA-based claim regarding a negative

12  employment decision, an employee must show that "taking of FMLA-protected leave

13  constituted a negative factor" in the complained-of decision.  Id.  This can be accomplished

14  through direct or circumstantial evidence, or both.  Id.[9]

15

16

17      [9] Visiting a negative employment consequence on an employee who takes FMLA-
18  protected leave gives rise to a claim for interference with the exercise of FMLA rights, a
    violation of 29 U.S.C. § 2615(a)(1).  See Bachelder, 259 F.3d at 1124; § 2615(a)(1)
19  (providing that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the
20  exercise of or the attempt to exercise, any right" protected by the FMLA).  Section
    2615(a)(2) prohibits discrimination that interferes with an FMLA right, providing that "[i]t
21  shall be unlawful for any employer to discharge or in any other manner discriminate against
    any individual for *opposing any practice made unlawful*" by the FMLA (emphasis added).
22  Finally, Section 2615(b) prohibits "[i]nterference with proceedings or inquiries," and makes
23  it unlawful "for any person to discharge or in any other manner discriminate against any
    individual because such individual--(1) *has filed any charge, or has instituted or caused to*
24  *be instituted any proceeding, under or related to [the FMLA]*; (2) *has given, or is about to*
25  *give, any information in connection with any inquiry or proceeding relating to any right*
    *provided under [the FMLA]*; or (3) *has testified, or is about to testify, in any inquiry or*
26  *proceeding relating to any right provided under [the FMLA]*" (emphasis added).  Therefore,
    because plaintiff has alleged that she suffered a negative employment decision after taking
27  FMLA leave, we construe plaintiff's "retaliation" claim as a claim for interference with
28  FMLA rights, in violation of § 2615(a)(1).

1    Defendants assert that plaintiff must prove that the adverse action complained of was

2  causally related to her FMLA leave. <u>See</u> <u>Reply</u> at 11.  Although Title VII retaliation claims

3  depend upon a causal nexus between the negative employment decision and the protected

4  activity, the Ninth Circuit requires that the FMLA leave constitute "a negative factor" in the

5  adverse employment decision.  <u>See</u> <u>Bachelder</u>, 259 F.3d at 1125.  Nevertheless, we are

6  persuaded that requiring a showing that the protected activity constituted a negative factor in

7  an adverse employment decision is another way of stating that there must be some causal

8  connection between the FMLA right and the employment decision. <u>See, e.g.</u>, <u>Morgan v. Hilti,</u>

9  <u>Inc.</u>, 108 F.3d 1319, 1325 (10th Cir. 1997).

10    Plaintiff alleges that the leave which forms the basis of her FMLA claim was the leave

11 she took for back injury therapy. <u>See</u> <u>Response</u> at 16.  She asserts causation by incorporating

12 her Title VII retaliation causation arguments into her FMLA contentions.  <u>See</u> <u>id.</u>  However,

13 plaintiff's Title VII arguments do not contend that plaintiff's back injury leave resulted in a

14 negative employment decision.  Instead, plaintiff specifically alleges that her June 2004 EEO

15 Complaint caused defendants to order an FFD.  <u>See</u> <u>Response</u> at 6.  Indeed, plaintiff never

16 asserts that her FMLA leave was a factor in *any* negative employment decision, let alone the

17 FFD.  Therefore, we grant defendants' motion as to this claim.

18    **THEREFORE, IT IS ORDERED GRANTING** defendants' motion for summary

19 judgment (doc. 19).

20    DATED this 12th day of April, 2007.

21

22

23

24    _Frederick J. Martone_

25    Frederick J. Martone
United States District Judge

26

27

28